**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| JOSEPH CAETANO, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> MATCH.COM, L.L.C., <br><br> Defendant. | Case No. <br><br><br> **JURY TRIAL DEMANDED** |

**CLASS ACTION COMPLAINT**

Plaintiff Joseph Caetano ("Plaintiff"), by and through undersigned counsel, brings this action against Match.com, L.L.C. ("Match" or "Defendant") on behalf of himself and all others similarly situated, and makes the following allegations based upon information, attorney investigation and belief, and upon Plaintiff's own knowledge:

**NATURE OF ACTION**

1. Plaintiff brings this action individually, and on behalf of all similarly situated persons, who paid for a Match subscription between June 2023 and the present.

2. This action arises from Match's deceptive trade practice in which it advertises "Highlights" (*i.e.*, other members who, according to Match, are "most compatible" with a user) to entice users to subscribe to Match's platform. However, users can only connect to individuals featured on Highlights through utilizing an additional paid add-on – "Super Likes."

3. Only once consumers have paid for their Match subscription do they discover that they must pay an additional amount to obtain and send Super Likes to these Highlights.

4. Moreover, in 2019, the U.S. Federal Trade Commission ("FTC") filed a complaint

against Match's parent company, alleging that the company used fake love interest advertisements to trick hundreds of thousands of consumers into purchasing paid subscriptions on Match.com. *See Federal Trade Commission v. Match Group, Inc.*, Case No. 3:19-cv-02281-K (N.D. Tex.). As such, Plaintiff believes that the advertisements regarding Highlights directly made to consumers (*i.e.*, specific Highlights sent to consumers via email) could be comprised of fake accounts in order to entice these consumers into purchasing Super Likes.

5.      Plaintiff alleges a violation of the New York General Business Law, breach of contract, and unjust enrichment.

## JURISDICTION AND VENUE

6.      This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs.

7.      This Court has personal jurisdiction over Defendant because it does business in the State of New York and solicited Plaintiff to use its services in the State of New York.

8.      Venue is proper in this District under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claims occurred in this District.

## PARTIES

9.      Plaintiff Joseph Caetano is an individual and a resident and citizen of the State of New York. Plaintiff subscribed to Match's services as a "platinum" member on or around June 2026 and has paid Match $89.70 for his subscription. Upon joining Match, and upon the representations made by Match, Plaintiff believed he would be able to contact any other member

2

on Match at no additional cost beyond his Platinum membership. Prior to subscribing to Match, Plaintiff was not aware that Highlights were placed behind a paywall. Plaintiff has received direct emails advertising his Highlights and encouraging him to send a Super Like to his Highlights.

10.     Defendant is, and at all times mentioned herein was, a corporation incorporated under the laws of the State of Delaware and headquartered in Dallas, Texas. At all relevant times, Match has provided and continues to provide online dating services to individuals residing in the State of New York.

## **BACKGROUND**

11.     Founded in 1993, Match is an online dating service operating in the State of New York, across the United States and internationally.

12.     Match offers its users a free account and four subscription tiers: bronze, silver, platinum, and diamond. Users can pay for one of the subscription tiers for a period of 1 month, 3 months, 6 months, or 12 months.

## **MATCH'S DECEPTIVE CONDUCT**

13.     As part of its platform, Match advertises its Highlights feature, offering dating options who are purportedly "curated daily, just for you" and are "people [Match] thinks you'll be most compatible with."

14.     Match further advertises on its home page that "[o]nce you see someone you like, all you have to do is send a Super Like." However, Match omits from its advertising that a Super Like is an additional paid feature, not automatically included in a user's subscription:



15.    Based upon this representation, users are enticed to join Match and pay for its subscription. Users are able to, and do, sign up to the platform at the top of the home page without accessing any other webpage, as reflected by the images below:





16.    All of the foregoing images are taken from Match's home page as of the time of filing this complaint, demonstrating that a user need not click on any other webpage to view Match's advertisements regarding Highlights or sign up to Match's platform.

17.    However, if a user clicks on to Match's separate "Free Online Dating" web page, as hyperlinked at the top of Match's webpage, then they are informed that free users can benefit from "unlimited messaging with your matches" and that "premium members can," among other things, "explore unlimited profiles."

So which membership is right for you? With more people than ever—whether male, female or non-binary—using dating services to search for their future partner, we offer both free and premium memberships. With a free membership, you'll have access to all of the features you need to meet people in your area, including:

- Unlimited messaging with your matches
- Customizable profile where you can add topics, photos, and interests to show your best self to potential matches
- Free daily intro
- Personalized recommendations based on your preferences and must-haves
- Access to in-app experiences such as 72 Hours to help you get out there IRL

If you want to elevate your dating experience and go beyond a limited version, you can upgrade any time to one of our premium memberships. Premium members can:

- Explore unlimited profiles
- Rewind your last pass
- Apply advanced filters to simplify your search for singles
- Send unlimited intros
- View read receipts on your messages

18.    By this clear and unequivocal language, users are informed that they have the ability to connect with any other user on an "unlimited" basis by paying for a subscription with Match.  Match fails to note that users cannot, in fact, connect with any other user and must pay an additional fee to connect with their Highlights.

19.    Similarly, on the "US Dating" web page, users are not informed that Highlights are hidden behind an additional paywall, but Match instead boasts the following, giving users the impression that they will be able to freely connect with *all* Match users, including Highlights:



Meet singles in your area

Meet people in the USA, wherever you are. The size of the Match community and the popularity of the site will allow you to find profiles that match your search and experience your online dating with peace of mind. Choose a city or region and discover the profiles of registered singles who are just a few kilometers from you.

Once connected, you can refine your search by adding more criteria and choose people to contact from the largest connected community of singles in the USA.

### Why Match Delivers Results

The most trusted platform for finding meaningful connections

**Millions of Active Singles**
Join the largest community across all 50 states

**Advanced filters to find your perfect match**
Advanced filters to find your soulmate

**Verified & Authentic**
Real profiles, genuine connections

Meet singles just around the corner

20.     From the signing up process, users are able to, and do, pay Match for either its bronze, silver, platinum, or diamond subscription package.

21.     Upon subscribing to Match's platform, users learn for the first time that the ability to send a Super Like and interact with Highlights is not unlimited and is not included in their paid-for subscription. Rather, Super Likes are paid add-ons for users to purchase.

22.     From further research by Plaintiff's counsel away from Match's main website, it appears Match offers one and three Super Likes per month for their platinum and diamond subscribers, respectively.[1] However, even the users on these subscription tiers are not informed prior to subscribing that Super Likes are limited and will require additional payment for more to be able to take full advantage of Match's advertised Highlights feature, particularly as Match offers three highlights per day for all members.

---

[1]     Plaintiff's counsel were able to find this information by searching on Match's help page, a separate website which is accessible via an inconspicuous hyperlink buried at the bottom of Match's main website. But even when entering the help page, the information about Super Likes being a paid add-on is not immediately obvious.

23.     Upon information and belief, Highlights, and the highlighted members, are not accessible through Match's ordinary Discover page. Match keeps the Highlights behind this paywall, foreclosing its paying members from being able to connect with their "most compatible" people unless they pay for Super Likes.

24.     Had Plaintiff and the Class known about Match's unfair and deceptive trade practices, then they would not have been induced to pay for a Match subscription. As a result, Plaintiff and the Class have suffered significant damage.

25.     Moreover, users receive regular emails from Match advertising their Highlights and enticing them to send a message to these Highlights, thus requiring a Super Like.

26.     However, as noted above, the FTC filed a complaint in 2019 against Match's parent company, alleging that the company used fake love interest advertisements to trick hundreds of thousands of consumers into purchasing paid subscriptions on Match.com. *See Federal Trade Commission v. Match Group, Inc.*, Case No. 3:19-cv-02281-K (N.D. Tex.). As such, Plaintiff believes that these email advertisements regarding Highlights could be comprised of fake accounts in order to entice these consumers into purchasing Super Likes. Plaintiff further believes that evidentiary support for these allegations will exist after a reasonable opportunity for discovery.

27.     In this event, the Class will have been damaged by paying for additional Super Likes to connect with users that do not exist. Had the Class known these advertisements and profiles were fake, then they would not have purchased the Super Likes.

## DAMAGES TO PLAINTIFF AND THE CLASS

28.     As a result of Match's unfair and deceptive trade practices and other unlawful conduct, Plaintiff and the Class have suffered ascertainable and measurable damage. Such damage includes, but is not limited to, the amount they paid for their Match subscription and any amounts

spent on Super Likes.

**CLASS ACTION ALLEGATIONS**

29.    This action is brought and may be properly maintained as a class action pursuant to The Class Action Fairness Act, 28 U.S.C. § 1332.

30.    This action has been brought and may properly be maintained as a class action against Defendant pursuant to the provisions of Rule 23 of the Federal Rule of Civil Procedure, because there is a well-defined community of interest in the litigation and the proposed Class is easily ascertainable.

31.    Plaintiff brings this action individually and on behalf of all others similarly situated, and seeks certification of a Class, defined as: "All persons who paid for a Match subscription from June 2023 through the present."

32.    Plaintiff also seeks certification of a New York Subclass, defined as: "All persons in New York who paid for a Match subscription from June 2023 through the present."

33.    The following are excluded from the Classes: Match, its affiliates, employees, officers and directors, heirs, successors and their assigns of any such person or entity, together with any immediate family member of any officers, directors, employee of said persons and/or entities, persons or entities that distribute or sell Match products or programs, the Judge(s) assigned to this case, and the attorneys of record in this case.  Plaintiff reserves the right to amend the Class definition if discovery and further investigation reveal that the Class should be expanded or otherwise modified.

34.    Plaintiff does not know the exact size of the Classes, but it is reasonably estimated that the Class is composed of millions of persons and the Subclass is composed of at least tens of thousands of persons.  While the identities of Class members are unknown at this time, this

information can be readily ascertained through appropriate discovery of the records maintained by Match.

35.    This action is properly brought as a class action because the proposed Classes are so numerous and geographically dispersed throughout the United States that the joinder of all Class members is impracticable.

36.    This action is properly brought as a class action because the disposition of Plaintiff's and proposed Class members' claims in a class action will provide substantial benefits to both the parties and the Court.

37.    This action is properly brought as a class action because the proposed Classes are ascertainable and there is a well-defined community of interest in the questions of law or fact alleged herein since the rights of each proposed Class member were infringed or violated in the same fashion.

38.    This action is properly brought as a class action because there are questions of law and fact common to the proposed Classes, which predominate over any questions that may affect particular Class members.

39.    Such common questions of law and fact include, but are not limited to:

(a)    Whether Match is engaged in unlawful, unfair, deceptive practices in violation of the New York General Business Law by engaging in the activities described herein;

(b)    Whether Match breached its contract with Plaintiff and the Class members;

(c)    Whether Match was unjustly enriched at the expense of Plaintiff and the Class members;

(d)    Whether Plaintiff and the Class members have been harmed and the proper

measure of relief, including damages;

(e)    Whether Plaintiff and the Class members are entitled to an award of attorneys' fees and expenses; and

(f)    Whether Plaintiff and the Class members are entitled to equitable relief, and if so, the nature of such relief.

40.    Plaintiff's claims are typical of the claims of the members of the proposed Classes. Plaintiff and the Class members have been injured by the same wrongful practices of Match. Plaintiff's claims arise from the same practices and conduct that give rise to the claims of all the Class members and are based on the same legal theories.

41.    Plaintiff will fairly and adequately protect the interests of the Classes in that they have no interests antagonistic to those of the other Class members and Plaintiff has retained attorneys experienced in class actions and complex litigation as counsel.

42.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy for at least the following reasons:

(a)    Given the size of the individual Class members' claims and the expense of litigating those claims, few, if any, Class members could afford to or would seek legal redress individually for the wrongs Defendant committed against them, and absent the Class action, have no substantial interest in individually controlling the prosecution of individual actions;

(b)    This action will promote an orderly and expeditious administration and adjudication of the proposed Class claims, economies of time, effort and resources will be fostered, and uniformity of decisions will be ensured; and

(c)    Plaintiff is not aware of any difficulty that will be encountered in the

11

management of this litigation, which would preclude Class certification.

43.    A class action is a superior and cost-effective method for the fair and efficient adjudication of the present controversy and there would accrue enormous savings to both the Court and the Classes in litigating the common issues on a Class wide basis, instead of on a repetitive individual basis.

44.    The prosecution of separate actions by individual Class members would run the risk of inconsistent or varying adjudications, which would (a) establish incompatible standards of conduct of Defendant in this action and (b) create the risk that adjudications with respect to individual Class members would, as a practical matter, be dispositive of the interests of the other members not parties to the adjudications or substantially impair or impede their ability to protect their interests.  Prosecution as a class action will eliminate the possibility of repetitious litigation.

## FIRST CLAIM FOR RELIEF

### (Violation of New York General Business Law, N.Y. Gen. Bus. Law § 349)
### (On Behalf of the New York Subclass)

45.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above, as if fully set forth herein.

46.    Plaintiff brings this claim individually and on behalf of the other New York Subclass members.

47.    GBL § 349 provides for consumer protection by declaring as unlawful "[d]eceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state . . . ."

48.    Match is an online dating platform which, among other things, is in the business of marketing and delivering online dating services to the general public.

49.    Plaintiff and the Class members are consumers of online dating services, who have

paid subscription fees and amounts for Super Likes to Defendant.

50. Match's efforts to sell its services to prospective users, which included Plaintiff and the Class members, were "consumer-oriented."

51. Match is subject to the same laws, both statutory and common law, which govern other purveyors of goods and services in New York.

52. Match is engaged in unlawful, unfair, deceptive practices in violation of GBL § 349 by engaging in the activities described herein.

53. As part of its marketing practices and sales efforts, Defendant made numerous statements, representations, and omissions to the public, including Plaintiff and the Class members, with respect to its online dating services and features.

54. Such statements, representations and omissions, which were uniform and identical in nature, were intended to induce potential users, including Plaintiff and the Class members, to sign up for a subscription with Match and/or pay for Super Likes.

55. Defendant's statements, representations and omissions were material to the decisions by Plaintiff and the Class members to subscribe to Match and proximately caused them to pay for the subscription and/or Super Likes.

56. The aforementioned statements, representations, and omissions made by Match were objectively false, misleading and deceptive to Plaintiff and the Class members.

57. Defendant's above-alleged actions constitute unfair business practices since the actions were deceptive and injurious to Plaintiff and the Class members because they paid for a subscription with Match with the reasonable expectation that they would be entitled to connect with their Highlights at no additional cost.

58. In fact, Plaintiff and the Class members were not entitled to connect with their

Highlights at no additional cost. Instead, Plaintiff and the Class members were required to pay additional amounts for Super Likes.

59.     Defendant violated GBL § 349 by engaging in deceptive acts or practices in the conduct of its business with Plaintiff and the Class members.

60.     Defendant's unfair and deceptive practices actually deceived or had the tendency to deceive its users, including Plaintiff and the Class members.

61.     At all relevant times, the ability to connect to Highlights at no additional cost was likely to make a difference in the purchasing decisions of its prospective subscribers.

62.     Plaintiff and the Class members had no means of knowing or learning that Defendant was engaged in the unfair methods of competition and deceptive acts or practices described herein.

63.     If Plaintiff and/or the Class members had knowledge of Defendant's unfair methods of competition and deceptive acts or practices described herein, they would not have subscribed to Match, purchased their specific subscription tier, and/or purchased additional Super Likes.

64.     Defendant's violations of GBL § 349, as described herein, have directly caused Plaintiff and the Class members to suffer ascertainable losses.

65.     As a proximate result of Defendant's violations of GBL § 349, Defendant is liable to Plaintiff and the Class members for compensatory damages.

66.     As a proximate result of Defendant's violations of GBL § 349, Defendant is liable to Plaintiff and the Class members for consequential damages.

67.     By reason of the foregoing, Plaintiff and the Class members have sustained damages in an amount to be determined at trial.

14

**SECOND CLAIM FOR RELIEF**

**(Violation of New York General Business Law, N.Y. Gen. Bus. Law § 350)**
**(On Behalf of the New York Subclass)**

68.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above, as if fully set forth herein.

69.    Plaintiff brings this claim individually and on behalf of the other Class members.

70.    New York's General Business Law § 350 makes unlawful "[f]alse advertising in the conduct of any business, trade, or commerce[.]" False advertising includes "advertising including labeling, of a commodity . . . if such advertising is misleading in a material respect," taking into account "the extent to which the advertising fails to reveal facts material in the light . . . representations [made] with respect to the commodity. . . ." N.Y. Gen. Bus. Law § 350-a.

71.    Defendant caused to be made or disseminated, through advertising, marketing, and other publications, statements that were untrue or misleading, and which were known, or which by the exercise of reasonable care should have been known to Defendant, to be untrue and misleading to consumers, including Plaintiff and the other Class members.

72.    Defendant misrepresented through advertisements that users could connect to Highlights while omitting that, in order to do so, users would be required to pay an additional amount beyond their subscription. Defendant further misrepresented through advertisements that users could connect to Highlights while concealing that certain Highlights were fake profiles.

73.    Defendant knew or should have known that its advertisements were false and misleading.

74.    Defendant has violated N.Y. Gen. Bus. Law § 350 because the misrepresentations and omissions regarding its Highlights and Super Likes, as discussed herein, were material and likely to deceive a reasonable consumer.

15

75.    As a direct and proximate result of Defendant's false and misleading advertising Plaintiff and the other Class members suffered injury.

76.    Plaintiff and the other Class members have suffered and will continue to suffer injury, ascertainable losses of money, and monetary and nonmonetary damages because Plaintiff and the other Class members paid for a Match subscription on the basis that they would be able to connect with their Highlights without any additional cost. Plaintiff and the Class members have suffered further harm through the purchase of Super Likes.

77.    The above false and misleading advertising by Defendant caused substantial injury to Plaintiff and the other Class members that they could not reasonably avoid.

78.    Plaintiff, individually and on behalf of the other Class members, seek all monetary and non-monetary relief allowed by law, including actual damages or statutory damages of $500 per violation (whichever is greater), treble damages, injunctive relief, and attorney's fees and costs.

79.    Defendant committed a separate and independent violation of N.Y. Gen. Bus. Law § 350 for each false advertisement pertaining or relating to the aforesaid unlawful conduct.

80.    Defendant should therefore be assessed statutory damages of $500 for each such violation, and all other such relief as may be just and proper.

81.    By reason of the foregoing, Plaintiff and the Class members have sustained damages in an amount to be determined at trial.

### THIRD CLAIM FOR RELIEF

### (Breach of Contract)

82.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above, as if fully set forth herein.

83.    Plaintiff brings this claim individually and on behalf of the other Class members.

84. A contractual relationship exists between Match and subscribers, including Plaintiff and the Class.

85. Among other things, in exchange for Plaintiff's and the Class's continued subscription, Match agreed to provide Plaintiff and the Class with Highlights that could be connected with.

86. The subject contract also imposed upon each party a duty of good faith and fair dealing in its performance and its enforcement.

87. Plaintiff and each Class member performed their obligations under the contract and complied with their duty of good faith and fair dealing.

88. Defendant had a duty of good faith and fair dealing not to take opportunistic advantage of Plaintiff and the Class members in a way that could not have been contemplated at the time of entering into the contract.

89. Defendant had a duty of good faith and fair dealing to act in accordance with the agreed common purpose and consistent with the justified expectations of the other party, namely Plaintiff and the Class members.

90. Defendant breached this duty of good faith and fair dealing.

91. Defendant breached its agreement with Plaintiff and the Class members by concealing from its users that Highlights can only be connected with via Super Likes which are an additional paid feature beyond the subscription.

92. Plaintiff and the Class members reasonably relied upon the fact that Defendant would offer Highlights that could be freely connected with.

93. Plaintiff and the Class members had no means of knowing or learning that Defendant was engaged in the unfair methods of competition and deceptive acts or practices

described herein.

94.    If Plaintiff and/or the Class members had knowledge of Defendant's unfair methods of competition and deceptive acts or practices described herein, they would not have purchased a subscription package from Defendant.

95.    By reason of Defendant's above-described breaches of contract, Plaintiff and the Class members have been damaged and sustained pecuniary injury.

96.    By reason of Defendant's above-described breaches of contract, Plaintiff and the Class members have been deprived of the benefit of their bargain, equal to what Plaintiff and the Class members would have received, if the representations regarding Highlights and Super Likes been true.

97.    By reason of Defendant's above-described breaches of contract, Plaintiff and the Class members have sustained out of pocket damages.

98.    By reason of the foregoing, Plaintiff and the Class members have sustained damages in an amount to be determined at trial.

**FOURTH CLAIM FOR RELIEF**

**(Unjust Enrichment)**

99.    Plaintiff re-alleges and incorporates by reference each of the allegations set forth above, as if fully set forth herein.

100.    Plaintiff brings this claim individually and on behalf of the other Class members.

101.    A substantial factor in the decision of Plaintiff and the Class members to purchase one of Match's subscription packages was the ability to freely connect with Highlights.

102.    Plaintiff and the Class members paid Match for a subscription in order to freely connect with these Highlights.

103. In fact, Plaintiff and the Class members did not receive the benefit of their bargain as, despite paying for a subscription package, they were not entitled to freely connect with Highlights and were required to pay an additional amount to purchase Super Likes.

104. Defendant's actions and conduct, as described herein, were false and misleading.

105. As a result of the foregoing, and in the alternative, Defendant was enriched at the expense of Plaintiff and the Class members by Defendant's wrongful conduct and actions, and accordingly, it is against equity and good conscience to permit Defendant to retain such enrichment.

106. In the alternative, Defendant is required to make restitution to Plaintiff and the Class members.

107. In the alternative, it would be inequitable and unjust for Defendant to retain the benefits it obtained without a return payment of value to Plaintiff and the Class members.

108. By reason of the foregoing, Plaintiff and the Class members have sustained damages in an amount to be determined at trial.

<u>**PRAYER FOR RELIEF**</u>

**WHEREFORE**, Plaintiff, individually and on behalf of all others similarly situated, prays for Judgment as follows:

(A) Certifying this case as a class action, with Plaintiff as Class representative and his attorneys (Gainey McKenna & Egleston) as Class counsel;

(B) Awarding Judgment to Plaintiff and the Class members for all available monetary damages and other relief;

(C) Awarding Plaintiff and the Class members their costs and disbursements, including reasonable attorneys' fees;

19

(D)     Granting such other and further relief as may be deemed just and proper in the premises.

## DEMAND FOR JURY TRIAL

Plaintiff demands trial by jury in this action of all issues so triable.

Dated: June 30, 2026

                                        **GAINEY McKENNA & EGLESTON**

                                        */s/ Thomas J. McKenna*
                                        Thomas J. McKenna
                                        Gregory M. Egleston
                                        Christopher M. Brain
                                        260 Madison Avenue, 22nd Floor
                                        New York, NY 10016
                                        Telephone: (212) 983-1300
                                        Facsimile: (212) 983-0383
                                        Email: tjmckenna@gme-law.com
                                        Email: gegleston@gme-law.com
                                        Email: cbrain@gme-law.com

                                        ***Attorneys for Plaintiff and the Putative Class***